241956. Thank you. Good morning, Your Honors. May it please the Court, Kissinger, Sibanda, appearing for Iancoveros. Your Honors, we respectfully ask that this matter be reversed and remanded to a different judge in the lower court. Our brief is very clear that the Rule 12b-6 was not applied according to our Rule 12b-6 should be applied in terms of inferences, credibility, weighing the credibilities, and in addition to the plausibility of the complaint. I think Ms. Veras has pled facts that are fairly plausible given her medical condition. She suffers from two tumors in her brain. She is a woman who has... Was there anything in the record to indicate that she asked for an accommodation? There was in terms of the DBNA SC deposition that she requested from the judge. Well, anything in the pleadings, anything in the complaint that refers to her requesting an accommodation? Yes, there is. You're talking about a workplace. There is evidence that was put on the second amended complaint. And she requested, Your Honor, the accommodation to have a cabinet for medication. And she requested also to have an assistance to help move around with the students. All that was denied. Would you point me to an allegation in the second amended complaint that makes clear that she took some action to oppose the Department of Education's discriminatory practice or what you view as a discriminatory practice? Your Honor, this is the issue that we never understood because she did mention that in the second amended complaint. She did internal complaints to Principal Trejo, and then she also did the external part with the human rights and with the EEOC. So she did file complaints to oppose what she regarded as discrimination or retaliation against her. Is that in the complaint? Yes, this is in the complaint. Where is that? You have to look at it on 52. Look at it on 52 as well as on 14. Paragraph 52? Paragraph 14 and paragraph 52. This is the thing that we never understood, Your Honor, is that we have given these facts, but in the opinion, it looks like those facts were not given. Paragraph 52 is what you're saying? Yes, paragraph 14 as well as paragraph 52. Paragraph 17 to 33 as well. I'm sorry, it should be 17 to- To 33 makes reference of that as well. 17. Well, 52 just says she was awarded Employee of the Year, and then it says, it makes some conclusory statements about harassment being condoned. I can come back to you, Your Honors, with the exact pinpoint of where she actually filed the complaints, but she did file a human rights complaint. She did file internal complaints with Mr. Trejo about the sexual harassment and the discrimination as well as the accommodation. I'm looking at 17. That's the paragraph on jurisdiction and venue, so maybe I misheard you. I said 17 to 33. That's why I was saying to Your Honors, if you want the exact pinpoint, I can come back, but it's in the Second Amendment complaint that she filed those complaints. Is there any answer? Yes, we respectfully request, because we believe that, firmly, the case law is such that the plausibility at this point that Ms. Varus is a disabled woman, as I was saying, two tumors, multiple of medical conditions, and the law court never even wanted us to use the DBNC deposition, which had so much information that she remembered, which we could have also used to show the plausibility. And that's why, for Your Honors, it is premature, given Ms. Varus' disability, for this complaint to be dismissed. I think the court should lean towards saying the plausibility, given her disability, is such that she may well recall small facts and that these facts are plausible. And there was nothing, as well, Your Honors, that we found conclusory, even if you look at the sexual harassment complaint that the man performed a sexual act in front of her. And the opinion of the court at 17 said, we don't see that as amounting to sexual harassment, and we really are offended that it could be compared to rape. Our position, Your Honors, was that it's not the way the judge looks at it subjectively, but the way the person who is offended is receiving it. A very fragile woman with two tumors and a sexual act in front of her, even if it's a single act, that will make the environment hostile for her. So, Your Honors, we are respectfully asking that this case be reversed on the grounds that discriminatory intent may well be shown and that she did all she could, given her limitations. Well, but again, it was dismissed on the pleadings. The conclusion of the district court was that you didn't plead facts in the complaint. You seem to be suggesting that there might be evidence out there that would establish that. But that's not going to make a difference when the motion is to dismiss on the pleadings. Do you understand? Yeah, I understand that. That's not what I'm saying. What I'm saying is that, given her conditions, she has pled plausibly under the law. Under these facts, she has pled plausibly. The fact does not need to be quantitative. The quality of the facts she has pled are plausible that there was discrimination based on religion, there was discrimination based on sexual act. So what are the facts in the complaint that support an inference that she was discriminated against on the basis of her religion? The facts on religion are, for example, that she was being name-called, and she was name-called, and then she reported that to the principal. And she was name-called, she was said, your perfume is witchcraft. And then she complained to the principal, and the principal ignored it. That alters the work environment, and it's a war-starved environment. Okay, so as you very kindly suggested, you'll have some time for rebuttal. And on rebuttal, you might be able to identify more specific language in the Second Amendment complaint that supports your argument. We'll hear from Mr. Rowe for the Department of Education. Good morning, Your Honors. May it please the Court, Martin Rowe on behalf of the respondents. Respondents respectfully request that this Court affirm the decision of the court below. Would you speak up a little bit? Sorry, Your Honor. Thank you. Respondents respectfully request that this Court affirm the decision of the court below, because the complaint does not plausibly allege sufficient facts supporting any of the claims and does not create an inference of discrimination, inference of intent for discrimination on any of the discrimination claims. And this is despite the fact that the lower court in its orders dismissing the First Amendment complaint specifically indicated to counsel the types of facts that needed to be added to the complaint to shore up these deficiencies. As to the disability discrimination, as Your Honors identified earlier, there's no indication of what accommodation she would have requested when she requested them or that they were specifically denied. And she further doesn't allege any specific comments or that she was treated differently on the basis of her disability. Turning to the religious discrimination, again, counsel was only able to point to a single statement regarding her perfume apparently smelling like witchcraft. But firstly, there's no indication that this unnamed employee even knew which religion she adhered to. And just on the face of that statement, it doesn't directly relate to any religion. It's a single offhand remark. Again, there's no indication that she was treated differently because of her protected characteristic of the religion she adhered to. Or I think I thought your argument was, maybe this is the argument you're making, or that it was connected in any way to the adverse employment action. Yes, that's correct, Your Honor. Turning to the gender discrimination cause of action, as Your Honor was just pointing to, in Alfano, this court said it must be because of sex. You need to have that causal connection between the protected characteristic. So to the extent it's based on a hostile work environment, it just doesn't meet the standards under Harris of pervasive and a workplace that's permeated with discrimination. Again, there's the two identified instances, one where there was a, I believe, humping inanimate object and the other was merely sticking the individual's tongue out at Ms. Ferris. Neither of those are sufficient to create a permeated place of employment with discrimination under the objective prong of little John. It's just insufficient as a matter of law to show that that was permeated. And to the extent that this court would look to the lower standard of looking at a single instance of discrimination, these do not even come close to that severity prong. Well, I don't know that that's a lower standard. That's just a different— A different—I apologize, Your Honor. I misspoke. A different standard. There is no showing of severity here, and courts have been careful not to get involved in these sort of personnel disputes that don't rise to a discriminatory action. And turning to the retaliation claim, again, there is no indication of what protected activity— So your friend on the other side, in response to our question, said that she complained, and it was after her complaints that some of the adverse—actually, some of the discriminatory practice started to occur, as I understand it. Yes, that was his claim, but there's nothing in the complaint to give any color to those allegations. As far as I have determined— Well, his other point is you don't need color. You just need an allegation under Vera and little John, and it's sort of a very minimal requirement. Yes, but even under that minimal requirement, you still need more than a naked statement of law that I filed complaints and I was discriminated against after I filed those complaints. Well, the timing might matter, right? Yes, but the timing itself is—she pointed to an instance in June 2019 where Defendant Fortunato cursed at her in the hallway, which she filed a report with HR for, but again, that's not connected in any way to a protected characteristic. That's merely a workplace disagreement. And then to the extent she did file a human rights complaint with the EEOC, that postdates the adverse employment action of her being transferred. That was in August of 2019, so that can't be the causal connection there. And just briefly on the negligent infliction of emotional distress claim, we would point out that there is no guarantee of genuineness here. It doesn't fit neatly within the type of claims for this that the court is familiar with, with the negligent reporting of death or mistake with a corpse, and there is no indication of she was placed in imminent fear of her physical safety. So if your honors have no further questions. Thank you very much. Thank you. Counsel. Your Honor, respectfully, the. Hold on one second, Counsel. You've got more fans coming in.   The deputies just returned it to three minutes. Please, thanks. Your honors, respectfully, as my colleague has said, the complaints were filed. The complaints were stated internally. The second amendment complaint at 23, you can look at that for the internal. At 23. Paragraph 23. And then after she makes these complaints, she's denied. Is that? At all times, defendant, employer violated these prohibited practices. Is that what? Yeah, 23, yes. Not in a singular instance, but in repeated actions direct. That's what you rely on. No, that's not what I relied on. As I'm saying, I'm not looking at the total of the second amendment complaint. But that's as he has acknowledged as well. She complained, and that's in the second amendment complaint. But the exact pin site. I'm not able to find right now, but it's in the second amendment complaint that she complained. And the incident he's talking about, the June 16th was the same man who did the sexual thing in front of her. Did she mention complaint counsel in the complaint itself? Or in an objection file? She did. She mentioned in the second amendment complaint. The complaints she made against lack of accommodation and discrimination are in the second amendment complaint. Where? That's the issue that I don't have the whole second amendment complaint in front of me. I think a couple people have looked at it, and that's a fundamental question. When the issue under the ADA is, among other things, a failure to accommodate claim, then I think you've got to allege with some level of specificity, not a lot, that there was a request made for an accommodation. And if you can't point us to that, then I don't see how you can prevail, nor do I see how we can assign error to the district courts. What I'm saying, Your Honor, is that I can point to, I don't have it in front of me right now, but it's in the second amendment complaint. And I don't want to start going to goose chases, but it's in there, and we put it in there. So that's not my point, is that it's not in there. It's in there. But I don't want to put it on the wrong pin site. In terms of the retaliation, the retaliation is self-evident, because as soon as she makes these complaints, then she's not hired back for the four jobs that she's qualified for, which is the student aid and so forth and so on. She's not hired, and people who are less qualified than her are hired. And she's been working for the education system for 29 years. And you pointed us to paragraph 52, a couple of other, but where specifically? Your Honor, I would say look at the statement of facts we put in our second amendment complaint. That is from 11 to 52. I don't want to pin site the exact point and say look here for where the complaint was filed. Mr. Esponda, that's my entire job. I know, I know. It's specific facts, so. That's why I'm saying specifically in there. I'm not, I don't have the second amendment complaint in front of me. That's what I'm saying. But it's in there, and you can take my word for it. I'm going to attempt to appear in front of you. We put it in there. I'm not suggesting that you're doing anything nefarious. I'm just saying it's always helpful to have specificity and precision. But you're telling us if we look, we'll find it. No, I'm telling you, even in our brief, we have specifically rebutted the fact that she made no complaints. Thank you. She made complaints to the principal. She made complaints externally to human rights. Your Honor, respectfully, just to sum up, it's a fallacy that she made no complaints. Even if you look at circumstantially, there's no woman I know personally that somebody would do something in front of her and she would make no complaint. She made complaints. We put it in the second amendment complaint. No, I very much appreciate the tenor of the case and the allegations. Thank you very much. Thank you, Your Honor. Thank you.